IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| **JOANNE E. HOLDEN,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**SELECTQUOTE, INC**., a Delaware corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff JoAnne E. Holden ("Plaintiff" or "Holden") brings this Class Action Complaint and Demand for Jury Trial against Defendant SelectQuote, Inc. ("SelectQuote") to stop the Defendant from violating the Telephone Consumer Protection Act by making telemarketing calls *without consent* to consumers who registered their phone numbers on the National Do Not Call Registry ("DNC") and to consumers who have specifically asked the Defendant to stop calling. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff JoAnne E. Holden is a resident of Aurora, Colorado.

2. Defendant SelectQuote is a Delaware corporation headquartered in Overland Park, Kansas. Defendant SelectQuote conducts business throughout this District and the U.S.

**JURISDICTION AND VENUE**

3. This Court has Federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant since the Defendant conducts business in this District and made telemarketing calls that Plaintiff received into this District.

5. The venue is proper under 28 U.S.C. § 1391(b) because the calls at issue were made into this District.

**INTRODUCTION**

6. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress

have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

8. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

9. When Congress enacted the TCPA in 1991, it found that Americans were receiving more than 18 million robocalls every day. 105 Stat. 2394 at § 2(3).

10. By 2003, due to more powerful autodialing technology, Americans were receiving more than 100 million robocalls every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

13. According to online robocall tracking service "YouMail," 4.4 billion robocalls were placed in March 2022 alone, at a rate of 140.8 million calls per day. www.robocallindex.com (last visited April 13, 2022).

14. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

15. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

16. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## ABOUT SELECTQUOTE AND INSIDERESPONSE

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

4

17. InsideResponse generates consumer leads for various insurance companies which provide health, auto, life, medicare and other insurance products.[3]

18. Defendant SelectQuote is an insurance brokerage company. It sells a variety of insurance plans from other insurance providers to consumers across the U.S.[4]

19. Defendant SelectQuote used to purchase consumer leads from InsideResponse and paid $16.1 million and $10.1 million for leads in 2020 and 2019, respectively.[5]

20. On May 1, 2021, Defendant SelectQuote acquired 100% of the assets of InsideResponse and gained control of their lead generation operations. InsideResponse is a part of Defendant SelectQuote's senior segment.[6]

21. Defendant SelectQuote controls and runs the operations of InsideResponse and uses InsideResponse to generate leads of seniors for soliciting their Medicare and other health insurance related products to those consumers.

22. Defendant SelectQuote makes unsolicited outbound telemarketing calls to consumers through InsideResponse, including calls to consumers registered on the DNC, to convert them into a lead, and transfer the call to Defendant SelectQuote.

---

[3] https://www.insideresponse.com/
[4] https://www.selectquote.com/about/
[5] https://www.selectquote.com/about/
[6] https://s23.q4cdn.com/545595037/files/doc_financials/2021/ar/SelectQuote-Inc.-June-30,-2021-10-K-2021-10-14-08-22.pdf

23. Defendant SelectQuote hires employees for InsideReponse to place cold calls using aliases including, but not limited to, 'Allied', 'Allied Partners', and 'Allied Insurance Partners' to solicit its products and services to consumers.

24. To make matters worse, Defendant SelectQuote continues to call consumers even after they have explicitly told them to stop calling.

25. For example, in Plaintiff Holden's case, Defendant SelectQuote placed multiple calls to her cell phone number which is registered on the DNC, and they continue to call the Plaintiff despite her instructing the Defendant to take her phone number off their calling list.

26. Several of Defendant's employees have posted about Defendant's cold calling practices of calling unsuspecting consumers who did not consent to receiving calls from Defendant SelectQuote doing business as InsideResponse, including:

- **Scam cold calling**
  Sales advisor (Former Employee) - Overland Park, KS - January 7, 2022
  Just a cold calling job, money can be good but is mostly luck, you call people.who doesn't know you are calling to get them to an insurance agent to quote them insurance but if they hang up you don't get it. [7]

- **Good money. High stress.**
  Inbound Sales Specialist (Former Employee) - Kansas City, MO - November 29, 2021
  The job is stressful. You will have people yelling at you everyday. Take it with a grain of salt. The money is decent but things were consistently getting changed so it could sometimes be tough to pass qc [8]

---

[7] https://www.indeed.com/cmp/Inside-Response/reviews
[8] *Id.*

6

- > Inside Sales Representative (Current Employee) - Overland Park, KS - December 28, 2017
  >
  > Lead generation can be tough with solely outbound cold calls. The work environment and the access to coaching is great. 150-300 calls a day. I have improved my phone communication skills. Most enjoyable part is being around good people and being at the top of the leader board.

  [9]

- > **Don't Work Here**
  >
  > Sales Specialist (Former Employee) - Remote - May 29, 2021
  >
  > They just try to scam old people by harassing them with messages, mail, phone calls, commercials, facebook ads, etc.
  >
  > Don't waste your time. Get a real job.

  [10]

- > **Keep looking**
  >
  > Sales specialist-customer service (Current Employee) - Overland Park, KS - March 15, 2021
  >
  > Overall, I'd say, not a great place to work. I feel like I'm mostly just a number and most of the time no one knows what's going on. They cut hours with no notice when call volume goes down. And by that, I mean, during Christmas time, they cut hours from 40 to 24 a week for 3 weeks. After a while, I realized we mostly just harass people with calls all day.

  [11]

- > **Read carefully**
  >
  > Sales Advisor (Current Employee) - Overland Park, KS - November 17, 2020
  >
  > The people you are calling have no idea why you are calling. They get leads from people trying to get gift cards online, applying for a job, or trying to get section 8. Then you have to try to convince them to talk to an agent about life insurance or Medicare. Most just hang up on you . Others YELL AT YOU. Then they hang up ....About 600+ calls

  [12]

27.     Multiple consumers have posted complaints online regarding unsolicited telemarketing calls they received from Defendant SelectQuote using the

---

[9] https://www.indeed.com/cmp/Inside-Response/reviews
[10] https://www.indeed.com/cmp/Inside-Response/reviews
[11] https://www.indeed.com/cmp/Inside-Response/reviews
[12] https://www.indeed.com/cmp/Inside-Response/reviews

7

alias "Allied Insurance Partners", including calls from 720-580-3868, the same phone number Plaintiff Holden received calls from, and including instances where Defendant kept calling the consumers even after they asked the Defendant to stop calling them, for instance:

[13]

- "Scanners. Called to discuss my Medicare part a and b since I had been on disability for 24 plus months......I've never been on Medicare nor disability. Caller: Allied Partners"[14]

- "I'm assuming some kind of scam.  They have called me 5 times since yesterday afternoon and never leave a message.  I have yet to pick up the phone. "[15]

- "She said she was calling because I need to resign with Medicare. I'm in my early 40s, not old enough for Medicare. Also, never give info, money, or business to anyone who unexpectedly calls you asking for it (except your kids if you want to). This is an obvious scam."[16]

---

[13] https://800notes.com/Phone.aspx/1-301-637-8360
[14] https://800notes.com/Phone.aspx/1-720-580-3868
[15] *Id.*
[16] https://www.telguarder.com/us/number/7205803868

8

- "Allied Insurance telemarketing call. told them to stop but they dont."[17]

- "I do not know who or what they are. That being said, I did not invite them to call me. I do not want them calling me nor do I want whatever they are selling. STOP"[18]

- Consumers reviews posted online for Defendant's alias "Allied Partners": [19]

> **Type of a scam** Healthcare/Medicaid/Medicare
> **Initial means of contact** Phone
>
> There's a guy at this company who continuously calls me after telling him not to and asks me the same questions over and over about my health insurance. I keep telling him I'm fine with what I have, so stop calling me. He's called me 14 times in the past week I think after telling this company to put me on their do not call list. The moment I tell him, he starts arguing with me on the phone, and then he calls back every day and does the same bull[censored]. I don't know his name, but this is my complaint against the company. They say they're from allied partners, but they will not stop harassing me. Please do whatever you can to help stop this situation because they're driving me [censored]ing crazy. My name is Stephen Choinsky and my phone number is 5[protected]. Their number is 518 631 2360

> **Victim Location** 98223
> **Type of a scam** Healthcare/Medicaid/Medicare
> **Initial means of contact** Not applicable
>
> Numerous calls on a daily basis.
> They are calling my place of business.
> They ask for my medicare information.
> When I ask who they represent, they say "Allied Partners".
> When I ask why they need my information, they hang up on me. ... but they always call back ...
> When I ask for information on their company, they hang up on me.
> When I say I won't share my personal information, they hang up on me.
> When I ask how they got my name and number, they hang up on me.
> So ... I called the number and asked to be removed from their call list, they said they can't help me & hung up on me.
> I don't know if this is a scammer (it feels like it) or just a very rude company who wants my personal information—either way, I'd like them to stop calling me!

---

[17] https://www.everycaller.com/phone-number/1-304-945-0863/
[18] https://www.google.com/search?q=%22inside+response
[19] https://www.scampulse.com/allied-partners-reviews

9

## PLAINTIFF HOLDEN'S ALLEGATIONS

28. Plaintiff Holden registered her cell phone number on the DNC on July 13, 2007.

29. Plaintiff's cell phone number is not associated with a business and is used for personal use only.

30. In February 2022, Plaintiff started receiving unsolicited calls from Defendant SelectQuote doing business as Allied, using the phone number 720-580-3868.

31. On February 17, 2022, Plaintiff received multiple calls from Defendant SelectQuote using the same phone number 720-580-3868, at 8:03 AM, 10:15 AM, and 1:18 AM. Plaintiff did not answer these calls.

32. On February 23, 2022, at 8:09 AM, and 9:14 AM, Plaintiff received calls from the Defendant using the same phone number 720-580-3868 to her cell phone. Plaintiff did not answer these calls.

33. On February 23, 2022, at 9:21 AM, annoyed by the unsolicited calls, Plaintiff called the phone number 720-580-3868 back and told the agent to stop calling her phone number.

34. On February 23, 2022, at 10:12 AM, Plaintiff received another call from Defendant using the same phone number 720-580-3868 despite having just made a stop request to the Defendant.

35. And Plaintiff continues to receive calls from Defendant SelectQuote. For instance, Plaintiff received another call from the Defendant using the same phone number 720-580-3868 on March 8, 2022, at 2:44 PM.

36. The unauthorized telephone calls that Plaintiff received from and/or on behalf of the Defendant have harmed Plaintiff Holden in the form of annoyance, nuisance, and invasion of privacy, occupation of her phone line and disturbance of the use and enjoyment of her phone, wear and tear on the phone's hardware (including the phone's battery), and consumption of memory on the phone

37. Seeking redress for these injuries, Plaintiff Holden, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

38. Plaintiff Holden brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf of the Defendant, called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason that Defendant called Plaintiff.
>
> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf of the Defendant, called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason that Defendant called Plaintiff, (5) including at least once after the person requested that Defendant or its agent to stop calling.

11

39. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

40. **Typicality and Numerosity**: Plaintiff is a member of the Classes, and on information and belief, there are hundreds, if not thousands of members of the Classes, all of which received calls from or on behalf of the Defendant as part of a single telemarketing campaign, and joinder of all members is impracticable.

41. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether the calls violated the TCPA;

  (b)  whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

  42. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither the Plaintiff nor her counsel have any interest adverse to the Classes.

  43. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, and thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to the Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the

13

members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Holden and the Do Not Call Registry Class)**

44. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

45. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

46. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

47. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Holden

14

and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

48. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Holden and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

49. As a result of Defendant's conduct as alleged herein, Plaintiff Holden and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

50. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

### SECOND CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Holden and the Internal Do Not Call Class)**

51. Plaintiff repeats and realleges paragraphs 1 through 43 of this Complaint and incorporates them by reference herein.

52. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any

call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a

> telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

53. Defendant, or an agent calling on behalf of Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant or its agent to initiate telemarketing calls.

54. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

55. The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a

result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Holden individually and on behalf of the Classes, prays for the following relief:

a. An Order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Holden as the representative of the Classes; and appointing her attorneys as Class Counsel;

b. An award of actual and/or statutory damages and costs;

c. An Order declaring that Defendant's actions, as set out above, violate the TCPA;

d. An injunction requiring the Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e. Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Holden requests a jury trial.

DATED this 17th day of April, 2022.

**JOANNE E. HOLDEN**, individually and on behalf of all others similarly situated,

By: /s/ *Stefan Coleman*
Stefan Coleman
law@stefancoleman.com
COLEMAN PLLC
66 West Flagler Street

Suite 900
Miami, FL 33130
(877)333-9427

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*